IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-604-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| REGINAL BRIAN ALEXANDER | ) | |
| _____ | ) | |

This matter is before the court upon the defendant's motions for a reduction in his sentence. In his first motion (ECF No. 2669), the defendant contends that under 18 U.S.C. § 3582(c)(1)(A), he should be released based on changes in the sentencing law, the length of his sentence, and the disparity created by his career offender designation. He argues that if he were sentenced today, he would not be deemed a career offender and his sentence would be significantly lower.

In his second motion (ECF No. 2785), the defendant relies on §§ 401 and 404 of the First Step Act of 2018 and contends that he is no longer a career offender. He claims that he was denied the 2-point reduction for crack cocaine at sentencing because he was designated as a career offender and now he is eligible for the 2-point reduction.

The government has responded in opposition, arguing that neither position advanced by the defendant has merit. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

1

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motions are respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C.

§ 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at

3

230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The defendant attests that he filed a request with his Warden on September 15, 2021 and that 30 days have lapsed with no reply from the Warden. Thus, it appears the defendant has exhausted his remedies and the court will proceed to decide the motions on the merits.

## PROCEDURAL HISTORY

The defendant was one of 32 defendants named in a one-count Superseding Indictment filed in this district on April 21, 2015. The government later filed an Information (ECF No. 340) pursuant to 21 U.S.C. § 851 to advise the defendant that he was subject to enhanced penalties as a result of the defendant's previous convictions for various controlled substance offenses.[1] The defendant pleaded guilty pursuant to a written Plea Agreement

---

[1] The defendant's prior state convictions on which the Information was based include the following: (1) 1-11-04: Possession less than one gram Ice/Crack Cocaine 1st. General Sessions Number 04-GS-2000291, Arrest Date: 5-28-2004; sentenced to 5 years suspended to 2 years probation; (2) 6-23-2008: Manufacturing, Possession Other Sub. Sch. I, II, III WITD 1st. General Sessions Number 08-GS-20000246. Sentenced to 2 years suspended to 90 days and 2 years probation; and (3) 8-11-2011: Drugs/Manufacturing, Distribution, Etc. of Cocaine Base 1st. General Sessions Number 10-GS-2000379. Arrest Date: 9-15-2010. Sentenced to 30 months then reinstate.

(ECF No. 971) to the lesser included offense in Count 1 of conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851.[2]

The Presentence Report (PSR) (ECF No. 1502) prepared by the United States Probation Office (USPO) indicated that the defendant was a career offender which resulted in a total offense level of 34 (after a 3-level departure for acceptance) with a criminal history category of VI. This yielded a Guideline sentencing range of 262 to 327 months. The PSR noted that because of the fact that the defendant was being sentenced as a career offender, there was no need for the court to consider the sentencing disparity between crack cocaine and powder cocaine.[3] The PSR also noted that the defendant was subject to a statutory mandatory minimum sentence of 10 years imprisonment. Ultimately, the court sentenced the defendant to a term of incarceration of 262 months to be followed by 8 years of supervised release.

The defendant filed a direct appeal of his conviction. In its mandate issued on September 26, 2017 (ECF No. 1854), the Fourth Circuit Court of Appeals affirmed this

---

[2] Although the defendant pleaded guilty to the lesser included offense involving 500 grams or more of cocaine, over the course of the conspiracy, the quantity of drugs supplied to others by the defendant was determined to be a total marijuana equivalent of 4,851.52 kilograms.

[3] For the past 15 years, this court has issued variance sentences by equating powder and crack on a 1:1 ratio, but the defendant's career offender status prevented such a variance here. The USPO noted in the PSR that using a 1:1 ratio of crack cocaine to cocaine powder would have no impact on the Guideline range as it was determined based on his status as a career offender rather than the drug weight.

court's judgment.[4] The defendant also filed a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 which this court denied (ECF No. 2534).[5]

*First Motion Under the First Step Act*

The defendant's first motion pursuant to the First Step Act (FSA) was filed in September 2019 (ECF No. 2305). There, the defendant sought a reduction of his sentence based on §§ 404(b) and 401 of the FSA. Embedded in that motion was the defendant's challenge to his career offender status via 28 U.S.C. § 2241. The court denied the motion finding first that the defendant's conviction was a "covered" offense under *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020). The court ultimately found that because the defendant was charged and sentenced after the enactment of the Fair Sentencing Act of 2010, this court lacked jurisdiction to modify his sentence under § 404 of the First Step Act of 2018.[6]

In its order (ECF No. 2537) denying the defendant's § 401 claim, the court noted that:

> Section 401 of the First Step Act changed both the level of predicate felonies required for sentence enhancement under 21 U.S.C. § 841(b)(1)(A) and the penalties to which such predicates subject a defendant. However, these

---

[4] In his appeal, the defendant raised claims of court error in accepting his guilty plea and denying a motion for a variance, as well as a *pro se* claim that this court erred in sentencing him as a career offender.

[5] Among allegations of prosecutorial misconduct and vindictiveness, the defendant also raised claims of ineffective assistance of counsel for failing to object to the two drug convictions used as the basis for his § 851 enhancement, as well as his conviction of domestic violence. He also claimed trial counsel was ineffective for not arguing that he should have received the benefit of the 2007 and 2010 amendments to the U.S. Sentencing Guidelines with respect to cocaine.

[6] *See* First Step Act § 404(c) (no court shall entertain a motion under this section if the sentence previously was imposed in accordance with amendments in Sections 2 and 3 of the Fair Sentencing Act of 2010).

> changes apply only to cases where the offense was committed prior to the enactment of the First Step Act, but a sentence had not yet been imposed as of the date of the First Step Act. Section 401 is not retroactive. The defendant was sentenced on October 6, 2016 — more than two years prior to enactment of the First Step Act. Thus, § 401's changes to the predicate felonies under §§ 841(b)(1)(B) and 851 do not apply to the defendant's sentence and the defendant is not entitled to relief.

*Id* at 6.

With regard to the § 2241 relief requested, the court found that the defendant's reliance on *United States v. Simmons*, 649 F.3d 327 (4th Cir. 2011) was inapplicable because *Simmons* involved a North Carolina conviction and the defendant's convictions used as § 851 predicates occurred in South Carolina.

The defendant also challenged his § 851 enhancement regarding the drug amounts, elements and seriousness, as well as his state domestic violence charges. The court advised the defendant that because these arguments had been disposed of within his previous § 2255 motion, they would not be revisited in the present order.

*Second Motion Under the First Step Act*

The defendant's September 3, 2020 motion under the First Step Act (ECF No. 2495) sought a reduction in his sentence below the mandatory minimum sentence, as well as a 2-point reduction from the 2007 and 2010 amendments to the U.S. Sentencing Guidelines. As the court noted in its order (ECF No. 2537), the defendant was already credited with 3 points for acceptance of responsibility at his original sentencing. In addition, because the defendant's guideline sentence was based on his career offender status and not any drug

weight calculations, the 2007 and 2010 Amendments to the U.S. Sentencing Guidelines dealing with powder cocaine would not have affected the defendant's sentence.

## DISCUSSION

I.  *Motion for Relief Under Sections 401 & 404 of the First Step Act*

In his present motion, the defendant again seeks relief under §§ 401 and 404 of the First Step Act (FSA). Section 404(b) of the First Step Act of 2018 retroactively applied the reduced penalties for covered cocaine base offenses provided by the Fair Sentencing Act of 2010. However, because the defendant was already sentenced in 2016 under the provisions of the Fair Sentencing Act, § 404(b) of the First Step Act does not provide the defendant any relief.

To the extent that the defendant argues that in light of FSA § 401 his § 851 predicate felonies for possession of cocaine base, manufacturing/possession of drugs, and distribution of cocaine base no longer qualify as predicate felonies for statutory sentencing enhancement under § 851, the defendant's argument is misplaced. Section 401 of the FSA raised the level of drug felony predicates required to statutorily enhance a sentence for certain violations of the Controlled Substances Act. After the First Step Act, the sentence for a violation of 21 U.S.C. § 841(b)(1)(B) can be statutorily enhanced based upon a prior serious drug felony conviction.[7]

---

[7] A serious drug felony includes state convictions involving distribution or manufacturing of controlled substances for which a defendant faced a maximum term of 10 years or more imprisonment, actually served more than 12 months imprisonment, and was released from that term of imprisonment within 15 years of engaging in the instant offense.

Section 401 of the First Step Act applies to offenses committed before December 21, 2018 for which the offender had not yet been sentenced, but § 401's changes to predicate felonies are not retroactive. The defendant was sentenced in 2016 — more than two years prior to enactment of the First Step Act. Thus, § 401's changes to the predicate felonies under §§ 841(b)(1)(B) and 851 do not apply to the defendant's sentence and the defendant is not entitled to relief.

II.  *Motion for Relief due to Intervening Changes in Sentencing Laws*

In his motion now before the court, the defendant also seeks compassionate release under the First Step Act and § 3582(c)(1)(A). He does not rely upon any medical ailment or the ongoing COVID-19 pandemic. Rather, he contends that if sentenced today, his sentence would be drastically different from the sentence imposed by this court in 2016. Specifically, the defendant argues that if sentenced today, he would no longer be considered a career offender because his offense of conviction was *conspiracy* to engage in narcotics offenses. Under *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), *conspiracy* to commit a drug offense no longer qualifies as a predicate offense under the career offender Guidelines. The government concedes as much in its brief. The government points out, however, that *Norman* has held by the Fourth Circuit Court of Appeals to be non-retroactive.

This leaves the defendant to rely on the holdings of *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), which authorizes this court to take into consideration intervening changes in sentencing law, even those declared to be non-retroactive, in a compassionate

10

release request. In *McCoy*, the Fourth Circuit Court of Appeals authorized district courts to exercise their discretion to reduce a defendant's sentence when certain compelling factors are present. In *McCoy*, the defendants were all at young age at the time of the commission of their offenses; they all had minor criminal records; and they received severe terms of incarceration pursuant to the then-applicable "stacking" regime of imposing sentences in § 924(g) convictions.

But simply saying that *McCoy* authorizes this court to reduce the defendant's sentence does not necessarily mean that this court is required to do so. In *McCoy*, the Fourth Circuit stressed several important factors that are not present in this case. As noted above, the defendants in *McCoy* were all teenagers or in their early 20s. Here, the defendant was more than 30 years of age at the time of the commission of the crime.

The defendants in *McCoy* had virtually no criminal record. Here, the defendant's criminal record includes the following convictions: criminal domestic violence (1999, 2000, 2003, 2008); possession of crack cocaine (2004); distribution of marijuana (2008); and manufacture/distribution of cocaine base (2010). His criminal point total was 9, resulting in a criminal history category of IV, which was increased to VI because the defendant was determined to be a career offender.

Moreover, in *McCoy*, the "unstacking" of successive § 924(c) mandatory consecutive sentences resulted in a huge disparity in the sentence imposed at the time compared to the sentencing were it to occur at the present. Here, there is a disparity, but not nearly so great

as it was in *McCoy*. As noted above, removal of the career offender designation would reduce the defendant's Guideline range from 262 to 327 months to 121 to 151 months.[8] Although this is a difference, it is not as substantial as the difference in *McCoy*, and the fact remains that, if sentenced today, the defendant's Guideline range would be approximately one-half of what it was when the defendant was originally sentenced.

The defendant's case is different from those defendants in *McCoy* for other reasons as well. The *McCoy* defendants' post-sentencing behavior while incarcerated was exemplary. Here, the defendant has incurred several disciplinary infractions while incarcerated. In 2017 he was sanctioned for phone abuse-disrupting monitoring (200-level violation). In 2018 he had a 300-level violation for possessing unauthorized items. In June, August, and November 2018 and February 2019, the defendant was sanctioned for being absent from assignment (300-level violations).[9]

On this record, the court determines that the defendant has not demonstrated an extraordinary and compelling reason for his release in terms of the sentencing law change that he relies on. The facts of this case are markedly different from those in *McCoy*.

The defendant's reliance on the recent Supreme Court case of *Concepcion v. United States*, 142 S.Ct. 2389 (2022), is to no avail. In *Concepcion*, the Court held that the First

---

[8] Defendant's mandatory minimum sentence would remain at 10 years (120 months) due to the § 851 enhancement, of which those predicates remains valid.

[9] Violations at the BOP are categorized as 100-level, 200-level, 300-level or 400-level, with 100-level violations being the most serious.

Step Act allows district courts to consider intervening changes of the law or fact in exercising its decision to reduce a sentence. *Concepcion* does not change the scope of the FSA, but instructs courts how to analyze resentencing motions if the FSA does apply.

### *Factors under § 3553(a)*

Even if the court were to determine the defendant had demonstrated an extraordinary and compelling reason for his release, the court would be constrained, after careful review of the § 3553(a) sentencing factors and the defendant's post-sentencing conduct, to deny the motion. The court will address such factors in turn.

1. *Nature and Circumstances of the Offense*. The defendant pleaded guilty to being a part of large drug trafficking activities involving the Folk Nation Gang in the District of South Carolina.[10] Cocaine distribution is a persistent and troublesome crime in this district. In fact, each year South Carolina is recognized as one of the top 5 districts in the country in terms of cocaine prosecutions.

2. *History and Characteristics of the Defendant*. As noted above, the defendant has an extensive criminal record. He did not complete high school and his employment history is minimal. The defendant was raised primarily by his mother and maternal grandmother. The defendant has never married, but has been in a long term relationship since approximately 2012, and they have a child together. According to his PSR, the defendant has 6 other children with 5 different women. Aside from high blood pressure, the defendant did

---

[10] The defendant has denied that he was a member of the Folk Nation Gang.

not present any negative physical health issues at the time he was sentenced. He also denied any gang affiliations although this case undisputedly involved selling controlled substances to members of the Folk Nation Gang.

The defendant has served just more than 50% of his 262-month sentence. He is housed at Federal Correctional Institution Elkton and his anticipated release date is November 2034.

*Post-Sentencing Conduct*

The defendant's disciplinary infractions were mentioned earlier in this order. He has not had any infractions since February 2019.

It appears that the defendant is enrolled in the GED program at the BOP. He has taken SLN (special learning needs) classes, drug education and AIDS awareness classes, as well as a class on understanding law.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific

deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion.

7. *Need to Avoid Unwarranted Disparity.* Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants. The defendant's 31 co-defendants received sentences ranging from a low of 24 months to a sentence of life. Of those, four co-defendants have filed for compassionate release and all four have been denied relief by this court. They are: James (270 months); Anderson (151 months as a result of a downward departure motion; Metz (120 months); and Richards (life).

## CONCLUSION

For the foregoing reason, this court determines that the defendant has not shown an extraordinary and compelling reason for his immediate release, even considering the intervening *Norman* decision and after a review under *McCoy*. Moreover, even if the court were to determine the defendant had demonstrated an extraordinary and compelling reason for his release, the court would nevertheless exercise its discretion to deny the motion after careful consideration of the § 3553(a) factors, coupled with the defendant's post-sentencing

15

conduct.[11]

    The defendant's motions (ECF No. 2669, 2785) are respectfully denied.

    IT IS SO ORDERED.

December 14, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[11] To the extent the defendant seeks to transfer to home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")